**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITES STATES OF AMERICA | : | CASE NO. 3:04CR284(PCD) |
| | : | |
| V. | : | |
| | : | |
| LAWRENCE ALIBOZEK | : | JANUARY 3, 2007 |

<u>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**</u>

The defendant, Lawrence Alibozek, in accordance with the Local Rules of Criminal

Procedure, submits this memorandum in aid of sentencing scheduled for January 8, 2006.  For

the reasons stated below, a sentence that does not include incarceration would be reasonable in

this case and conform with the principles of "individualized justice" as articulated in *United*

*States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).  Also, such a sentence would comply with

the statutory mandate that a sentence be sufficient, but not greater than necessary to comply

with the purposes of sentencing.  See 18 U.S.C. § 3553(a).  Based on a complete review of Mr.

Alibozek's background as well as consideration of other sentencing factors listed in Section

3553(a), a sufficient and just sentence in this case is a sentence of probation.

On March 10, 2003 – over three years ago – Mr. Alibozek plead guilty to Conspiracy to

Solicit and Accept Corrupt Payments and Impeding the Functions of the Internal Revenue

Service in violation of 18 U.S.C. § 371.  Both before and after that date, Mr. Alibozek met with

representatives of the government on more than twenty occasions and provided information on

other defendants in this case.  Mr. Alibozek's assistance was integral in convicting several of

these individuals.

Mr. Alibozek respectfully submits that factors exist which make his case eligible for

downward departure from the recommended offense level.  The grounds for downward

departure are as follows:

1. Mr. Alibozek's assistance "broke the log jam" and resulted in the conviction of other defendants in this case.
2. Mr. Alibozek has accepted responsibility for his actions in such a way as to take his case out of the "heartland" of cases.  A consequence of his cooperation is repeated harassment by agents hired by the co-defendants, and a downward departure is warranted.
3. Mr. Alibozek's exemplary charitable good deeds warrant a downward departure.
4. Mr. Alibozek has lost his livelihood as a result of his conviction.
5. Mr. Alibozek has suffered serious health effects from his involvement in this case, including declining physical and mental health.
6. The combination of the factors listed above supports a downward departure.

### I. The facts and circumstances of this case warrant a downward departure from the recommended offense level.

Typically, a sentencing court will impose a sentence within the applicable range of the

Sentencing Guidelines.  18 U.SC. § 3553(b).  See also *United States v. Bryson*, 163 F.3d 742,

747 (2d Cir. 1998); *United States v. Rogers*, 972 F.2d 489, 493 (2d Cir. 1992).  However,

"[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies

but where conduct significantly differs from the norm, the court may consider whether a

departure is warranted."  *Koon v. United States*, 518 U.S. 81, 93 (1996).  Furthermore, Title 18,

United States Code Section 3553(a) provides the framework within which a sentencing judge

must consider in imposing a "reasonable" and "individualized" sentence.  In Mr. Alibozek's

case, a sentence of probation conforms to the mandates of the Federal Sentencing Commission,

18 U.S.C. § 3553(a), and *United States v. Booker*, 543 U.S. 220 (2005).

### A.  The Presentence Report.

The defendant wishes to address two paragraphs in the Presentence Report.  First,

paragraph two states that sentencing has been continued on several occasions "at the

defendant's request."  Sentencing was continued so that Mr. Alibozek could assist federal

agents in the prosecution of co-defendants in this case.  After Mr. Alibozek entered his guilty

plea, he met with federal agents on numerous occasions to assist them in their prosecutions.

Second, paragraph 134 states "[a]s of this writing, Mr. Alibozek has not submitted a Personal

Financial Statement."  Shortly after the report was completed, Mr. Alibozek submitted his

financial affidavits to probation.

### B.  Factors to be considered in imposing a "reasonable" and "individualized" sentence pursuant to 18 U.S.C. § 3553(a).

Title 18, United States Code Section 3553(a) provides:

> <u>Factors to be considered in imposing sentence</u>.  The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the kinds of sentence and the sentencing range established for –
   A. the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

. . .

5. any pertinent policy statement—
   A. issued by the Sentencing Commission . . .
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

Under "pre-*Booker*" sentencing, the court was obligated to:

Impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described.

18 U.S.C. §3553(b).

4

However, in 2005, the Supreme Court ruled that the Guidelines' mandatory nature was unconstitutional. *United States v. Booker*, 543 U.S. 220 (2005). The Supreme Court held that the Guidelines' mandatory nature violated a defendant's Sixth Amendment right to trial by jury. *Booker*, 543 U.S. at 233-34. The Court held that a sentencing court was still required to consider the guideline range, but it must also consider the other factors listed under Section 3553(a) when imposing a sentence. *Id.* While the federal sentencing statute "requires a sentencing court to consider Guidelines ranges . . . it permits the court to tailor the sentence in light of other statutory concerns as well. . . ." *Booker*, 543 U.S. at 245-46. Therefore, a sentencing court must now undertake a more particularized analysis:

> Sentencing will be harder now than it was a few months ago. District courts cannot just add up figures and pick a number within a narrow range. Rather, they must consider all of the applicable factors, listen carefully to defense and government counsel, and sentence the person before them as an individual. *Booker* is not an invitation to do business as usual.

*United States v. Ranum*, 353 F.Supp.2d 984, 987 (E.D.Wis. 2005).

After *Booker*, the Second Circuit confirmed that the Guidelines sentence was but one of seven factors that a sentencing court must consider. See *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). As the Court directed in *Crosby*:

> [S]entencing judges remain under a duty with respect to the Guidelines – not the previously imposed duty to apply the Guidelines, but the continuing duty to "consider" them, along with other factors listed in

> Section 3553(a).  We have every confidence that the judges in this Circuit will do so, and that the resulting sentences will continue to substantially reduce unwarranted disparities **while now achieving somewhat more individualized justice.  In short, there need be no "fear of judging."**

(Emphasis added.)  *Crosby*, 397 F.3d at 111-12.  See also *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005) (prior to *Booker*, sentencing courts "understandably gave predominant, indeed controlling, weight to two factors in §3553(a):  the sentencing range established by the federal Sentencing Guidelines . . . and the pertinent policy statements of the Sentencing Commission."  Now a court must comply with its statutory obligation to consider all of the factors in § 3553(a)).

Thus, while a sentencing court must consider the Guidelines, there is no presumption that the sentencing court should give the guidelines any priority over the factors listed in Section 3553(a).  The Guidelines calculations are to be treated "as just one of a number of sentencing factors."  *United States v. Ranum*, 353 F.Supp.2d at 985 .  In fact, **giving the Guidelines any presumptive correctness or weighted consideration would, in effect, resurrect them to the level of de facto mandatory**, which runs afoul of *Booker*.  See *United States v. West*, 383 F.Supp.2d 517, 519-20 (S.D.N.Y. 2005); *Simon v. United States*, 361 F.Supp.2d 35, 40 (E.D.N.Y. 2005).

In *Crosby*, the Second Circuit discussed the issues that must be considered by the sentencing court after *Booker*.

> First, the Guidelines are no longer mandatory.  Second, the sentencing judge must consider the guidelines and all of the other factors listed in Section 3553(a).  Third, consideration of the Guidelines will normally require determination of the applicable guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements.  Fourth, the sentencing judge should decide, after considering the Guidelines and all other factors set forth in Section  3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.  Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby*, 397 F.3d at 113.  Because the Guidelines are not mandatory, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.'  Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by the reasons tied to the §3553(a) factors."  *United States v. Ranum*, 353 F.Supp.2d at 987.

Similarly, the limitations established by the Sentencing Commission respecting downward departures have no bearing on facts that a court can take into account when considering the Section 3553(a) factors.  For example, it is appropriate to consider, pursuant to

Section 3553(a) (1), a defendant's life of charitable work, even if such factors are discouraged as grounds for downward departure within traditional Guideline analysis. The *Ranum* court stated:

> The Guidelines' prohibition of considering these factors cannot be squared with the § 3553(a) (1) requirement that the court evaluate the "history and characteristics" of the defendant. . . . Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the Guideline range.

*Ranum*, 353 F.Supp.2d at 986. See also *United States v. Emmenegger*, 329 F.Supp.2d 416, 428 (S.D.N.Y. 2004) (which stated that the Guidelines "err in giving virtually no weight to the 'history and characteristics of the defendant,' which Congress instructs the sentencing courts to consider equally with 'the nature and circumstances of the offense.' 18 U.S.C. § 3553(a) (1)" Finding that the defendant's age is a relevant factor in assessing the likelihood of recidivism).

In Mr. Alibozek's case, the Probation Office calculated the Offense Level under the Advisory Guidelines to be a level of 17 with an imprisonment range of 24 to 30 months. See Presentence Report (hereinafter "PSR") at ¶ 137. However, none of the Section 3553(a) factors justify a sentence of incarceration for Mr. Alibozek. Such a sentence would undermine the principal goal of sentencing that a defendant should receive "just punishment." For the reasons articulated below, a non-Guideline sentence of probation would be reasonable in this case and fulfill the Second Circuit's recognition of imposing "individualized justice." *United States v.*

*Crosby*, 397 F.3d at 114.  Also, a sentence of probation would satisfy the statutory mandate that

"a sentence be sufficient, but not greater than necessary" to comply with the purposes of

sentencing.  18 U.S.C. § 3553(a).

## II.  Factors which warrant a sentence of probation for Mr. Alibozek.

There are several factors which the Court should consider when sentencing Mr.

Alibozek.  As stated in the introduction, *supra*, these factors include:

1.  Mr. Alibozek's assistance "broke the log jam" and resulted in the conviction of other defendants in this case.
2.  Mr. Alibozek has accepted responsibility for his actions in such a way as to take his case out of the "heartland" of cases.  A consequence of his cooperation is repeated harassment by agents hired by the co-defendants, and a downward departure is warranted.
3.  Mr. Alibozek's exemplary charitable good deeds warrant a downward departure.
4.  Mr. Alibozek has lost his livelihood as a result of his conviction.
5.  Mr. Alibozek has suffered serious health effects from his involvement in this case, including declining physical and mental health.
6.  The combination of the factors listed above supports a downward departure.

### A.  Mr. Alibozek's assistance "broke the log jam" and resulted in the conviction of other defendants in this case.

The Second Circuit has recognized that when a defendant's actions assist the

government in a multiple-defendant case, the District Court has the authority to downwardly

depart from the Sentencing Guidelines.  See *United States v. Garcia*, 926 F.2d 125, 128 (2d

Cir. 1991).  In *United States v. Garcia*, 926 F.2d at 128, the Second Circuit concluded that:

> The additional assistance rendered the court in the disposition of the charges against the other defendants justified the departure from the Sentencing Guidelines. As judge Daly found, [the defendant's] conduct 'broke the log jam' in a multi-defendant case. His relatively early plea and willingness to testify against co-defendants induced [the other defendants] to enter guilty pleas. This conserved judicial resources by facilitating the disposition of the case without trial.

> In cases such as this, the district court has "sensible flexibility" to depart in circumstances where departure from the Sentencing Guidelines has a reasonable basis.

*Id.* at 128.

In the instant matter, Mr. Alibozek's conduct broke the log jam in a similar fashion and provides grounds for a downward departure. Mr. Alibozek's guilty plea resulted in the successful prosecution of other defendants in this case. As Hugh F. Keefe acknowledged in a recent New York Times article, "[Alibozek] was a significant part of the prosecution's case . . . in [Peter] Ellef's case." *Getting 40 Gold Coins, and a Role in a Corrupt Governor's Downfall*, New York Times, Dec. 2, 2006. Indeed, Mr. Alibozek's cooperation contributed greatly to the prosecution of other co-defendants as well. In particular, Former Governor John Rowland was convicted following Mr. Alibozek's cooperation. Both before and after Mr. Alibozek pled guilty, he met with federal agents over twenty times and provided information which assisted the government in the prosecution of other co-defendants. His efforts were instrumental to the government's case.

Just as in *Garcia*, Mr. Alibozek's cooperation contributed greatly to the inducement of other co-defendants to plead guilty, conserving judicial resources by "facilitating the disposition of the case without trial." *Garcia*, 926 F.2d at 128. The "sensible flexibility" recognized in *Garcia* permits this court to depart from the recommendation of the Sentencing Guidelines and impose a sentence below those recommended.

**B. Mr. Alibozek has accepted responsibility for his actions in such a way as to take his case out of the "heartland" of cases. A consequence of his cooperation is repeated harassment by agents hired by the co-defendants, and a downward departure is warranted.**

An individual who exhibits an extraordinary acceptance of responsibility may qualify for a departure beyond that outlined in U.S.S.G. § 3E1.1. See *United States v. Mickens*, 926 F.2d 1323, 1332-33 (2d Cir. 1991). The PSR in this case indicates that Mr. Alibozek should, pursuant to Section 3E1.1(a) and (b) of the Sentencing Guidelines, be given a three-level reduction due to his acceptance of responsibility in this case. PSR at ¶ 109. Because his acceptance of responsibility is truly extraordinary, it exhibits a degree of contrition greater than that contemplated by Section 3E.1 and a further downward departure is warranted.

> A defendant who pleads guilty is routinely afforded a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In *Mickens*, this Court held that a defendant who exhibits a higher degree of contrition than contemplated by § 3E1.1 may, in an appropriate case, receive a downward departure. The rationale of *Mickens* is that a defendant who realizes his wrongdoing and acts quickly to accept culpability for his crime may deserve more favorable treatment than one

who only agrees to plead guilty in the face of a forcible arrest and federal prosecution.

*United States v. Rogers*, 972 F.2d 489, 493 (2d Cir. 1992).

As stated above, Mr. Alibozek's early guilty plea contributed greatly to the government's case. *Mickens* and *Rogers*, however, contemplate situations where a defendant plead guilty early in the process and demonstrate a renunciation of the conduct before entering the plea. In this case, Mr. Alibozek has demonstrated conduct which warrants a downward departure.

Mr. Alibozek agreed, as part of his plea agreement, to waive his rights to be indicted. Plea Agreement Letter, dated March 10, 2003, Attached to the PSR. This demonstrates that Mr. Alibozek made this decision in an effort to accept the responsibility for his actions. Perhaps even more telling is that Mr. Alibozek renounced his conduct before he knew that federal prosecution was going to be initiated. As was stated in the PSR, ¶ 146:

> [W]hat differentiates Mr. Alibozek from his co-defendants is the fact that at a point in time prior to any knowledge of a federal investigation, Mr. Alibozek's conscience awoke and he no longer could morally participate in the offense behavior. He washed his hands of the wrongdoings and TREA and returned to State service, distancing himself from his codefendants.

The results of Mr. Alibozek's guilty plea and cooperation has taken a great toll on his mental and physical health, and has subjected Mr. Alibozek and his family to repeated

harassment by private investigators hired by the Tomasso Group.  Federal agents are aware of harassment by these individuals, which began shortly after Mr. Alibozek entered his guilty plea.  Mail has been stolen from his home.  Mr. Alibozek's children have been followed by investigators and had their vehicles "bumper-locked."  Mr. Alibozek and his wife have also been followed by investigators.  Members of the community have been interrogated by Tomasso agents, including Mr. Alibozek's son's girlfriend.  Mr. Alibozek's home has been broken into and his phone has been tapped.  A cottage located across the street from Mr. Alibozek was rented by investigators, presumably to conduct surveillance.  Two months ago, two vehicles with individuals inside were parked in front of Mr. Alibozek's home for an extended period of time.  Federal agents have confirmed that this activity was conducted by individuals hired by the Tomasso Group.  Some of these individuals have criminal records.  Mr. Alibozek fears that this conduct will continue even after he is sentenced.

Mr. Alibozek did not renounce his conduct because he was caught in the act.  He renounced his actions long before he was aware of any federal prosecution.  He distanced himself from other co-defendants and attempted to get on with his life.  When he was made aware of federal prosecution, he quickly pled guilty and assisted the federal government in the prosecution of other co-defendants in this case.  As a result of Mr. Alibozek's cooperation, he has suffered severe harassment by investigators hired by co-defendants in this matter.  Both 18

13

U.S.C. § 3553(a) and the Sentencing Guidelines contemplate a downward departure from the recommended sentence in circumstances such as this.  Mr. Alibozek has demonstrated an even higher degree of contribution than that contemplated by Section 3E1.1 of the Guidelines.  As in *Mickens* and *Rogers*, a further downward departure is warranted.

### C.   Mr. Alibozek's exemplary charitable good deeds warrant a downward departure.

A person's history of charitable and employment-related contributions and/or good deeds is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.  See U.S.S.G. § 5H1.11.  However, factors such as charitable contributions and good deeds may be a basis for departure if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.  *Koon v. United States*, 518 U.S. 81, 96 (1996).  See also *United States v. Crouse*, 145 F.3d 786 (6th Cir. 1998) (civic work was a permissible ground for the district court to consider in departing downward).

The Court is authorized to consider the history and charitable good deeds of a defendant because it is authorized in 18 U.S.C. § 3553(a) (1).  "The court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant. . . ."  18 U.S.C. 3553(a)(1).

In *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996), the Second Circuit held that the District Court did not abuse its discretion by departing downward from level 20 to level 10, in part on the basis of the defendant's charitable efforts and civic good deeds, which included fundraising for the Kidney Foundation.  See *Rioux*, 97 F.3d at 663.  See also *United States v. Woods*, 159 F.3d 1132, 1136 (8th Cir. 1998) (defendant's charitable efforts of bringing two troubled young women into her home and sending them to private schools, along with her assistance with moving an elderly friend from a nursing home to an apartment where she helped to care for him, constituted exceptional charitable efforts and supported a one level downward departure from the guidelines).

Mr. Alibozek's life has had an enormous impact on a number of individuals.  Some of these individuals submitted letters to the Court and to the Probation Office explaining how Mr. Alibozek has positively influenced their lives.  Mr. Alibozek has committed his life to helping others, both before and after the entrance of his guilty plea.  Some examples of his assistance to others include:

1.    Helping his elderly neighbor, Nora Cavanaugh of New Hartford, by performing odd jobs around her home.  Mr. Alibozek has been helping Ms. Cavanaugh for the past twenty years;

2.    Mr. Alibozek and his family, for the past three years, have volunteered their time to help HIV/AIDS patients at Peter's Retreat in Hartford.  Mr. Alibozek and his family serve dinner to patients and provide entertainment to those in attendance;

3.    Mr. Alibozek has volunteered his time at Saint John's Church in New Hartford for the past five years.  He has helped with grounds keeping, painting, and other odd jobs around the church;

4.    Mr. Alibozek assists his elderly uncle, John Vasso, by performing odd jobs around his home and acting as his driver.  Mr. Alibozek has been doing this for the past four years.

There are a number of individuals, outside of Mr. Alibozek and his family, who will suffer if Mr. Alibozek is incarcerated for even a brief period of time.  Mr. Alibozek has demonstrated, both prior to and after entrance of his guilty plea, that he is a positive, influential person in the community.  As 18 U.S.C. § 3553(a) (1) advises, the Court should consider the defendant's history and character in making its sentencing determination.  Mr. Alibozek's history of giving to the community allows ample justification for a downward departure.

### D.  Mr. Alibozek has lost his livelihood as a result of his conviction.

As a result of the conviction in his case, Mr. Alibozek will never again be permitted to work in a government position.  In fact, because of the infamy of this case, Mr. Alibozek will have a difficult time obtaining any employment in the future.  Courts have recognized that collateral employment consequences which arise from a conviction may be considered as grounds for downward departure.  See *Koon v. United States*, 518 U.S. 81, 109-110 (1996). Because the loss of livelihood for Mr. Alibozek is atypical and removes his case from the "heartland" of cases, a downward departure should be granted.

In *Koon*, the United States Supreme Court considered the Ninth Circuit's holding that career consequences could not be considered a relevant reason for a downward departure. The Supreme Court disagreed:

> We agree with the Court of Appeals that a defendant's career may relate to his or her socioeconomic status [a forbidden consideration under the guidelines], but the link is not close as to justify categorical exclusion of the effect of conviction on a career. Although an impermissible factor need not be invoked by name to be rejected, socioeconomic status and job loss are not the semantic or practical equivalents of each other.

*Id*. at 110.

The infamy of this case is well documented. Mr. Alibozek certainly will never again be able to work in public service. However, because of the public notoriety of this case, Mr. Alibozek will have difficulty maintaining any meaningful employment in the future. Mr. Alibozek has started a modest landscaping business. However, he has had difficulties obtaining jobs because of the infamy of this case.

Even without the present difficulties Mr. Alibozek has experienced in starting his landscaping business, it is clear that Mr. Alibozek will never again have the type of career he had in both public and private service for the many years before he plead guilty. As was stated in the PSR:

> The defendant has lost a great deal as a result of his participation in the instant offense. Foremost, once an effective and confident businessman,

> Mr. Alibozek is now paralyzed by the thought of his professional future,
> **should he have one**.

(Emphasis added.)  Considering the severe impact on the defendant's future career prospects, a downward departure is warranted.

### E.  Mr. Alibozek has suffered serious health effects from his involvement in this case, including declining physical and mental health.

As was stated in the PSR:

> The defendant was once a happy and vivacious person, but is now an emotional wreck who lacks the self-esteem and confidence to pull himself out of his house on a daily basis.

PSR at ¶ 147

The defendant has clearly suffered both mentally and physically from the weight of the situation.  Mr. Alibozek has been involved in counseling from NOVA Counseling Service under the care of Laura Ann Kramer.  His care includes treatment for Adjustment Disorder, Anxiety, Depression, Post-Traumatic Stress Disorder, and Generalized Anxiety Disorder.  See PSR at ¶¶ 123-127.  Mr. Alibozek also has regular checkups for high blood pressure.

Much of Mr. Alibozek's mental health difficulties have been related to his guilt over these circumstances.  Also, much of it is also due to the repeated harassment by agents working for the co-defendants in this case.

> Mr. Alibozek was "diagnosed with Adjustment Disorder with mixed anxiety and depression.  He also experiences symptoms of Post

Traumatic Stress Disorder including hypervigilence related to the continuing reality of harassment of his family."

PSR at ¶ 123.

The Court is permitted to consider circumstances of the defendant not contemplated within the sentencing guidelines. See *United States v. Merritt*, 988 F.2d 1298, 1307 (2d Cir.), cert denied 113 S.Ct. 2933 (1993). In *Merritt*, the Court of Appeals examined both the statutory scheme of the Sentencing Reform Act and the test of the Federal Sentencing Guidelines and reiterated that a district judge must consider a defendant's individual characteristics. First, the Court noted that the Senate Report to the Sentencing Act specifically ordered that the characteristics of the defendant were to be considered in determining a just sentence. See *Merritt*, 988 F.2d at 1307. The Senate Report provided:

> The Committee does not intend that the Guidelines be imposed in a mechanistic fashion. It believes that the sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the Sentencing Guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, **not eliminate the thoughtful imposition and of individualized sentences**.

(Emphasis added.) S.Rep.No. 225 98th Cong., 2d Sess. 52, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3236. See also *Merritt*, 988 F.2d at 1307 n.3; *United States v. Lara*, 905 F.2d at 604 (2d Cir. 1990).

The *Merritt* court also reviewed 18 USC § 3553, "[t]he keystone section in the creation of the new sentencing system." The court focused on the statutory mandate of § 3553(a)(1) that the "characteristics of the defendant" are factors to be considered in imposing a sentence. *Merritt*, 988 F.2d at 1306-07. Further, the *Merritt* Court reviewed the Guidelines, Policy Statement, Application Notes, and Commentary formulated by the Sentencing Commission and observed that there is little guidance regarding the use of the defendant's characteristics. Nevertheless, the Court concluded that "the absence of Guideline commands for the defendant characteristics represents the Commission's wise judgment that it is far more difficult to quantify the effect that such characteristics should have on individual sentences, than it is to prescribe relative values to a variety of offenses." *Merritt*, 988 F.2d at 1309.

The Second Circuit has recognized the propriety of departure based upon characteristics of the defendant in widely varying circumstances: extraordinary family circumstances,[1]

---

[1] See *United States v. Johnson*, 964 F.2d 124 (2d Cir. 1992) (affirming district court's determination that extraordinary family circumstances and responsibilities warranted a ten level downward departure); *United States v. Alba*, 933 F.2d 1117 (2d Cir. 1991) (the district court's reliance upon the defendant's family circumstances wherein he supported his wife, two children, his mother and disabled grandfather by working two jobs constituted legitimate grounds for downward departure from the guideline range of 41-51 months to six months in a halfway house).

voluntary surrender and extraordinary acceptance of responsibility,[2] exceptional charitable and civic contributions,[3] and **poor health**.[4]

Here, Mr. Alibozek's poor physical and mental health has been greatly influenced by both his conduct and the consequences of his guilty plea. Because of the extraordinary circumstances of the defendant's diminished mental and physical health, a downward departure is warranted.

### F. The combination of the factors listed above supports a downward departure.

The factors in this memorandum, considered together, warrant a downward departure. The Sentencing Commission contemplated that a combination of factors could warrant a downward departure, by stating that:

> The Commission does not foreclose the possibility of an extraordinary case that because of a combination of such characteristics or circumstances, differs significantly from the heartland of cases covered by the guidelines in a way that is important to the statutory purpose of

---

[2] See, e.g., *United States v. Rogers*, 972 F.2d 489, 493 (2d Cir. 1992) (voluntary surrender raises a basis for downward departure); *United States v. Mickens*, 926 F.2d 1323 (2d Cir.), cert. denied, 112 S.Ct. 940 (1992) (a defendant who exhibits a higher degree of contrition than contemplated may receive a downward departure).

[3] See, e.g., *United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996) (charitable and civic contributions, along with defendant's health problems warranted 10 level downward departure).

[4] See, e.g., *United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996) (defendant's health problems along with his charitable and civic contributions warranted 10 level downward departure).

> sentencing, even though none of the characteristics or circumstances individually distinguishes the case.

U.S.S.G. § 5K2.0, commentary.

The Second Circuit has determined that a combination of factors may constitute a circumstance that has not been adequately taken into consideration by the guidelines.  See e.g., *United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir. 1990) (combination of employment record and unusual circumstance of commission of offense).  See also *United States v. Cook*, 938 F.2d 149, 153 (9th Cir. 1991) ("There is no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a mitigating circumstance.  [A] unique combination of factors may constitute the 'circumstance' that mitigates").  In *United States v. Rioux*, the Second Circuit recognized that "[i]n extraordinary cases, . . . the district court may downwardly depart when a number of factors that, when considered individually, would not permit a downward departure, combine to create a situation that differs significantly from the 'heartland' of cases covered by the Guidelines."  *Rioux*, 97 F.3d at 663 (citing U.S.S.G. § 5K2.0 cmt.).

In the instant matter, if this court were to determine that no one single factor warrants a downward departure, then a combination of all of the factors presented warrant a downward departure.  See *Rioux*, 97 F.3d at 663.  Therefore, the defendant asks for a downward departure based on all of the arguments above.

## III.  Conclusion

As recognized by the Second Circuit, "departure in the appropriate case is essential to the satisfactory functioning of the sentencing system." *United States v. Merritt*, 988 F.2d at 1039.  As stated above, Mr. Alibozek has been severely punished for his conduct.  As was stated in the PSR:

> Unfortunate for all, it appears that Mr. Alibozek has imprisoned himself for the past two years.  However, his family is resigned to facilitate a different future.  They want to move forward, to enjoy daily activities and each other.  It appears that they are committed, as evidence by their participation in counseling, to better the circumstance of the family and of each other.

PSR at ¶ 148.

Based on the reasons cited above, the instant case is an appropriate one for downward departure.  In compliance with 18 U.S.C. § 3553(a)'s mandate for a sentence, but not greater than necessary to comply with the Sentencing Act, the defendant requests a sentence of probation with appropriate conditions fashioned under the law.

Respectfully submitted,
The Defendant
Lawrence Alibozek

BY:    _____
William T. Gerace
Juris #:  ct00030
Gerace & Associates
21 Oak Street – Suite 604
Hartford, CT  06106
Ph:  (860) 525-4461
Fax:  (860) 527-2439

## <u>CERTIFICATION</u>

THIS IS TO CERTIFY THAT a copy of the foregoing Sentencing Memorandum was faxed and mailed this 3d day of January, 2007 to:

    Nora R. Dannehy, A.U.S.A.
    Office of the United States Attorney
    450 Main Street, Room 328
    Hartford, CT  06103

And mailed Federal Express to:

    Jacqueline Carroll
    United States Probation Officer
    Probation Department
    157 Church Street, 22d Floor
    New Haven, CT  06520

                                     _____
                                     William T. Gerace