UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 3:03CR63206 (PCD) |
| v. | : | |
| | : | |
| LAWRENCE E. ALIBOZEK | : | January 8, 2007 |

**GOVERNMENT'S REDACTED MEMORANDUM
IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE**

Pursuant to Section 5K1.1 of the United States Sentencing Guidelines, the government requests that the Court impose a sentence of imprisonment below applicable sentencing guideline range of the defendant, Lawrence E. Alibozek, in that he provided substantial assistance to the government in the investigation and prosecution of the following individuals and entities: John G. Rowland, Peter N. Ellef, William A. Tomasso, Tunxis Management Co., and LF Design, LLC. The nature, extent and significance of the defendant's cooperation are detailed below.

**I. Introduction**

John G. Rowland was elected Governor of the State of Connecticut in November 1994. Governor Rowland appointed Ellef to be the Commissioner of the Department of Economic and Community Development (DECD) in approximately August 1995. DECD is responsible for creating both job opportunities for Connecticut businesses and housing opportunities for Connecticut residents. As Commissioner of DECD, Ellef hired Larry Alibozek, initially as a durational project manager. Alibozek ultimately became a Deputy Commissioner of DECD. Prior to joining the Rowland administration, Alibozek and Ellef were employed by Cigna/Connecticut General Life Insurance Company for many years.

In October 1997, Governor Rowland appointed Ellef as Co-Chief of Staff to the Governor. At Ellef's recommendation, Rowland hired Alibozek as his Deputy Chief of Staff. Alibozek served as Deputy Chief of Staff until July 1999, when he left state government to form TREA LLC.

On March 10, 2003, Alibozek pleaded guilty to a one-count Information charging him with conspiring to violate 18 U.S.C. § 666 (bribery concerning programs receiving federal funds) and to defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371. Alibozek admitted that he agreed with others to accept the cash, gold and things of value with the intent to be influenced and rewarded in connection with state business, and that he knew that the cash, gold and other things of value were given by persons doing business with the State of Connecticut with the intent to influence and reward state officials, including him, in connection with state business.

Even prior to becoming members of Rowland's staff, Ellef and, to a lesser extent, Alibozek had a close, personal relationship with William Tomasso. Ellef, Alibozek and Tomasso developed both a personal and business relationship during the time that Ellef and Alibozek worked at Cigna. When Ellef and Alibozek went to DECD, the relationship with Tomasso continued. Ellef, with Alibozek's assistance, promoted Tomasso companies at DECD. The corrupt nature of the relationship truly flourished, however, when Ellef and Alibozek went to the Governor's Office.

Pursuant to U.S.S.G. § 2C1.1, the Probation Office has calculated the defendant's adjusted offense level to be 17, and his criminal history category to be I, resulting in a sentencing

imprisonment range of 24 to 30 months and a fine range of $5,000 to $50,000. The defendant is presently scheduled to be sentenced on January 8, 2007.

## II. Discussion

Section 5K1.1 of the Sentencing Guidelines permits the Court to impose a sentence of imprisonment below a defendant's applicable Sentencing Guideline range

> [u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense . . . .

U.S.S.G. § 5K1.1. The decision whether to make a motion for downward departure rests exclusively with the government. U.S.S.G. § 5K1.1; United States v. Garcia, 926 F.2d 125, 128 (2d Cir. 1990) (quoting United States v. Rexach, 896 F.2d 710, 714 (2d Cir. 1990)); United States v. Huerta, 878 F.2d 89 (3d Cir. 1989). The Court in Huerta observed that the question of "substantial assistance" is "self evidently a question that the prosecution is uniquely fit to resolve." Id. at 92. Section 5K1.1(a) provides that the appropriate reduction shall be determined by the Court based upon, but not limited to, the following considerations:

(1)   the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2)   the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3)   the nature and extent of the defendant's assistance;

(4)   the timeliness of the defendant's assistance; and

(5)    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance.

These criteria are addressed below.

**A)** **<u>Nature and Extent of the Defendant's Assistance</u>**

Alibozek began cooperating with the government in September 2002, after FBI agents visited him at his home and questioned him about an entity called TREA LLC. Between September 2002 and the time of Ellef's and Tomasso's guilty pleas in October 2005, Alibozek informed the government about both the corrupt manner in which he and Ellef conducted State of Connecticut business and the bribes and other things of value, disguised sometimes as consultant payments or in the form of cash or gold, that Tomasso provided in order to influence Ellef and Alibozek in connection with official business.

Alibozek testified in the grand jury and was prepared to testify at the trial of Ellef, Tomasso and others. Alibozek provided the government with key information regarding the way in which Ellef and Tomasso concealed the corrupt nature of their relationship, that is Alibozek assisted the government in uncovering evidence that Ellef and Tomasso, in addition to a well known and apparently accepted friendship, also had a corrupt relationship. Alibozek provided details of conversations and transactions between him, Ellef and Tomasso that was critical to the successful prosecution of Ellef, Tomasso and Tomasso-related entities. In addition, based in part on information from Alibozek, the government successfully prosecuted John G. Rowland who pleaded guilty on December 23, 2004 to a dual objective conspiracy including corruption charges and tax conspiracy.

**B)** **<u>Significance and Usefulness of the Defendant's Assistance</u>**

Alibozek's assistance to the government was invaluable. As a corrupt public official who had personal knowledge of how decisions were made and how he was influenced, Alibozek provided important insight into the corruption in the Governor's Office during the Rowland

administration. A critical component of the investigation and prosecution of individuals within the Rowland administration was Alibozek's willingness to admit that he took things of value which influenced him in his position as Deputy Chief of Staff and to cooperate fully with the government. Alibozek provided details of how Tomasso was taking care of him and Ellef through TREA; Alibozek provided bank records which evidenced how the flow of cash was concealed. Alibozek described how Tomasso was provided inside information regarding state projects and how he and Ellef took steps to steer the renovations at Long Lane School and the construction of the Connecticut Juvenile Training School (CJTS) to Tomasso and his companies.

Despite great personal and professional costs, Larry Alibozek agreed to cooperate with the government. He was instrumental in uncovering a corrupt administration and exposing other officials who lined their pockets at the expense of honest and fair government. In contrast, Ellef stood before this Court and did not utter a word of remorse; Rowland misled this Court. Rowland never voluntarily agreed to provide information to the government but now is out "marketing" his story for a fee. Alibozek chose a different path. He admitted early on that he had acted criminally and agreed to work with the government in its investigation. The nature and significance of that decision should be given due consideration by this Court.

C)    **Truthfulness and Reliability of the Defendant's Information and Testimony**

In the government's view, the information provided by Alibozek regarding the corrupt and illegal practices of not only himself but also Peter Ellef, William Tomasso and Tomasso-related entities was truthful and reliable. Alibozek's credibility as a witness was evidenced by the consistency of his recollection of the key events and transactions and by the corroboration supplied by bank records, hotel records, telephone records and other documents. Moreover, in

many ways, Alibozek's testimony was self-corroborating in that only Alibozek could describe precisely how, as one of the public officials, he was influenced and how Ellef, with Alibozek's assistance, arranged for Tomasso to provide monies and others things of value to them.

### D)    Timeliness of the Defendant's Assistance

The defendant provided prompt and timely information to the government. As noted above, Alibozek began cooperating with the government in September 2002, almost immediately after law enforcement agents visited his home and questioned him about TREA LLC and only months after the investigation commenced.

### E)    Danger or Risk of Injury to the Defendant or his Family

Alibozek's decision to cooperate did not result in physical injury to him or his family. But, his cooperation resulted in what can only be described as severe emotional injury



Finally, as this Court is aware, as a result of his cooperation, Larry Alibozek and his family were followed by private investigators, videotaped by private investigators and, at times, harassed by private investigators.

### III. <u>Conclusion</u>

Pursuant to U.S.S.G. §5K1.1, the government respectfully requests that the Court downwardly depart from the applicable sentencing guidelines range of the defendant, Lawrence E. Alibozek, to reflect the valuable assistance that he provided to the government in connection with the investigation and prosecution of others.

Respectfully submitted,

JOHN H. DURHAM
ACTING UNITED STATES ATTORNEY


BY:/s/Michael S. McGarry
MICHAEL S. McGARRY
FEDERAL BAR NO. ct25713

NORA R. DANNEHY
ASSISTANT  UNITED STATES ATTORNEY
FEDERAL BAR NO. ct01942
450 MAIN STREET
HARTFORD, CT 06103
(860) 947-1101

CERTIFICATION OF SERVICE

  This is to certify that a copy of the within and foregoing has been mailed, first class, postage prepaid, this 8th day of January 2007 to:

William Gerace, Esq.
21 Oak Street
Hartford, Connecticut 06106


U.S. Probation Officer Jacqueline Carroll
U.S. Probation Office
CT Financial Center
157 Church Street, 22nd Fl.
New Haven, CT 06510

          /s/Michael S. McGarry
    By: MICHAEL S. McGARRY
      ASSISTANT UNITED STATES ATTORNEY

    For: NORA R. DANNEHY
      ASSISTANT UNITED STATES ATTORNEY